BRIAN YANIGA
v.
ARTHUR MONROE.
No. 2007 CA 0697.
Court of Appeals of Louisiana, First Circuit.
December 21, 2007.
STEPHEN D. MARX, Attorney for Plaintiff/Defendant-in-Reconvention/Appellant, BRIAN YANIGA.
WILLIAM J. JONES, JR., Attorney for Defendant/Appellee, ARTHUR MONROE.
Before GAIDRY, MCDONALD and MCCLENDON, JJ.
MCDONALD, J.
Plaintiff Brian Yaniga, appeals a judgment of the 22nd Judicial District Court dismissing his demands against Arthur Monroe. For the following reasons, the judgment is affirmed.

FACTS AND PROCEDURAL BACKGROUND
Yaniga is a martial arts expert who taught martial arts to persons in the Covington, Louisiana area for approximately 20 years. In 2004, he operated Yaniga's Karate Center from a building that he owned in Covington. The building, which had approximately 8500 square feet in area, contained four "bays" or units. Yaniga's karate classes were conducted in the fourth bay, which is accessible to the remainder of the building through an interior door, and also from an exterior entrance. The Young Men's Christian Association (YMCA) had a lease on the first three bays of the building that also provided for use of the fourth bay Monday through Saturday "as long as it does not interfere with Yaniga's Karate Classes in the evenings 5:00 p.m. to 9:00 p.m. and some Saturday afternoons." The YMCA lease was for 18 months ending October 31, 2004.[1]
Sometime prior to June 2004, Yaniga approached Monroe, indicated that he did not want to continue his martial arts school, and inquired if Monroe was interested in taking over his business.[2] Pursuant to discussions on this matter, Monroe entered into a lease with Yaniga dated June 2, 2004 for the 2000 square feet consisting of Unit 4 of the Covington building for a term of 18 months, beginning June 1, 2004[3] and ending November 30, 2005, for the sum of $1500.00 per month. A typewritten portion of the lease providing that the lessee was responsible for the payment of all utilities for the area that it occupies was scratched through by Monroe and "If YMCA leaves Art Monroe will take over the Electric bills for the 2000 Sq ft. leased" substituted. The lease further provided that the lessee was obligated to maintain, at his expense, general liability insurance with the lessor as additional named insured with a minimum coverage of $1,000,000.00. Monroe paid Yaniga $750.00 for half of the first month's rent. Also signed by Monroe on June 2, 2004, was a notarized statement of assumption of charges with BellSouth, assuming payment of all charges attributed to or associated with the telephone number in the name of Yaniga's Karate Center.
A document on Art Monroe's letterhead recited that Yaniga assigned all accounts, center number 780 to Monroe as of June 3, 2004, that all monies collected between June 3, 2004 through June 10, 2004, were to be forwarded to Yaniga, and that after June 10, 2004 were to be forwarded to Monroe. This document, used to notify a third-party billing company regarding future collections from Yaniga's students, was signed by Monroe, but not by Yaniga. Yaniga testified, however, that he did sign the document and did not dispute that he assigned the collections to Monroe. Yaniga testified that he assigned all his students, including prepaid students, to Monroe.
Monroe attempted to take possession of the leased property and assumed instruction of Yaniga's students in mid-June. After approximately two weeks, he determined that the situation was not as had been represented to him and abandoned the premises and the students.
On September 29, 2004, Yaniga filed a petition for damages alleging that Monroe had agreed to take over Yaniga's entire karate business and provide instruction to Yaniga's students and additionally had entered into a lease for a teen of 18 months and monthly rent of $1500.00, of which only $750.00 had been paid. Yaniga alleged that Monroe was liable to him for $26,250.00, representing the balance due under the terms of the lease, the value of prepaid accounts assigned to Monroe, and damages to Yaniga's reputation.
Monroe answered, alleging that the premises leased by Monroe was encumbered by a prior lease between Yaniga and the YMCA, which constituted a breach of the warranty of peaceable possession of the leased premises and an eviction or constructive eviction of Monroe; that Yaniga committed civil fraud in connection with Monroe's lease by misrepresenting the number of students at Yaniga's Karate Center; that this misrepresentation was the principal cause of Monroe entering into the lease; that as a result of the alleged civil fraud by Yaniga, the Monroe lease was either absolutely or relatively null and void; that Monroe did not agree to fulfill any obligations that Yaniga may have had to his students, and did not receive any money for prepaid accounts. Monroe reconvened seeking return of the $750.00, damages, attorneys' fees, all costs of the proceedings, legal interest and all general and equitable relief.
After trial on the merits, a judgment was signed dismissing Yaniga's demands against Monroe, dismissing Monroe's demands against Yaniga and ordering each party to pay his own costs. Monroe did not appeal the judgment. Yaniga timely lodged an appeal contending that: (1) the trial court erred in failing to find that Yaniga had not sold his karate business to Monroe and in failing to find that Monroe breached the agreement, and (2) the trial court erred in finding that Monroe was entitled to abandon the leased premises.

DISCUSSION
The trial court recited its findings in the record at the conclusion of the trial. With regard to the sale of Yaniga's karate school, it found no contract of sale of the business. The court noted that although Yaniga testified that he had assigned his prepaid students, it found no written agreement to that effect, nor any agreement that Monroe would teach those students for any specific period of time. We find no error in the conclusion by the trial court that there was no contract of sale of Yaniga's business. A sale is a contract whereby a person transfers ownership of a thing to another for a price in money. The thing, the price, and the consent of the parties are requirements for the perfection of a sale. La. C.C. art. 2439; Rachal v. Luzader, 05-1280 (La. App. 3rd Cir. 4/19/06), 927 So.2d 1286, 1288. While the record indicates that Yaniga intended to turn over his business to Monroe, and that Monroe originally intended to assume it, the legal requirements to constitute a sale were not met.
With regard to the lease, the court found that Yaniga had failed to deliver peaceable possession of the leased premises, which the civil code requires the lessor to warrant to the lessee. Specifically, the court correctly noted that Monroe's lease did not disclose the use of Unit 4 by the YMCA or by a church on Sunday mornings. The lessor is bound from the very nature of the contract to cause the lessee to be in peaceable possession of the thing during the continuance of the lease. La. C.C. art. 2682[4]; Essen Development v. Marr, 95-1344 (La. App. 1st Cir. 11/30/95), 687 So2d 98, 100. A lessor who allows one of his lessees to disturb the possession of his other lessees breaches his obligation to maintain the lessee in peaceable possession. Id. We find no error in the trial court's findings regarding Monroe's obligation under the lease.
The trial court further found that Monroe would have carried out his obligations under the documents he signed, but that he felt there had been misrepresentations made as to the lease and the number of students. Ultimately, the trial court found that the majority of the evidence suggested that Monroe should prevail. Implicit in this finding is its acceptance of the truthfulness of Monroe's testimony. A trial court's findings of fact may not be set aside by an appellate court unless they are manifestly erroneous. Where there is conflict in the testimony, an appellate court may not disturb a trial court's reasonable evaluations of credibility and reasonable inferences of fact. Where there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. Essen Development, 687 So.2d at 100.
For the foregoing reasons, the trial court judgment is affirmed and this opinion is issued in accordance with URCA Rule 2-16.1.B. Costs of this appeal are assessed to Brian Yaniga.
AFFIRMED.
NOTES
[1] A church leased the fourth bay on Sunday mornings. At the times relevant here that lease was month-to-month.
[2] Monroe is a martial arts instructor who studied TaeKwon-Do for 35 years, and owned and operated martial arts schools in south Louisiana
[3] The typewritten lease, furnished by Yaniga, recited the term as shown above; however, under the section entitled "Term," Monroe had handwritten and initialed June 14, 2004.
[4] Prior to 2005, the civil code article setting forth the obligations arising from the nature of the contract of lease was article 2692.